# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KIM BERUTTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00641-NKL |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Kim Berutti appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. Because the Administrative Law Judge's decision is not supported by substantial evidence, the Court reverses for further development of the record.

**I.  Background**

Berutti suffers from degenerative joint disease in the knees and shoulders, bilateral shoulder rotator cuff tears, degenerative disk disease, cervical myofascial pain, obesity, ankle and foot impairments, and anxiety. She alleges her onset date of disability is February 1, 2015. Tr. 10. For more than fifteen years prior to that date, Berutti worked as a certified nursing assistant (CNA), which was physically taxing because it involved lifting patients. Tr. 44-45. After the alleged onset date, Berutti complained primarily of back and knee pain, received various work restrictions from her doctors, and continued to work as was feasible, but this work did not constitute substantial gainful employment according to the Administrative Law Judge (ALJ). Tr. 12, 296, 300, 303 (imposing 30-pound lifting maximum); 643. In February 2017, Berutti underwent a total right knee arthroplasty. Tr. 594. She had previously received a left

1

knee replacement in 2013. Tr. 42. In addition to her knee conditions, Berutti suffers from shoulder and foot pain. As to the shoulder pain, in August 2018, Berutti fell and sustained a rotator cuff injury. Tr. 690. Surgery was recommended in March 2019, but not pursued due to complications with her blood pressure medications and smoking. Tr. 790, 800. As to the foot pain, Berutti attended physical therapy with some success. Tr. 580, 582, 691. Throughout this period, Berutti took Norco and other medications to reduce her pain. *E.g.*, Tr. 64, 449, 643-44, 707. She intermittently sought part-time employment. *E.g.*, Tr. 36-37 (Berutti testifying that she started party-time employment with Goodwill the week before her hearing in September 2019); Tr. 673 (describing bending and lifting in a new job in August 2018).

Berutti filed her application for disability insurance benefits on August 21, 2018. Tr. 10. A hearing with an administrative law judge (ALJ) occurred on September 25, 2019, and the ALJ denied Berutti's application on October 3, 2019. Tr. 7, 32.

The ALJ found Berutti has the following severe impairments: degenerative disc disease of the lumbar and cervical spine; degenerative joint disease of the knees, bilaterally; bilateral rotator cuff tears, right greater than left; mild degenerative joint disease of the shoulders, bilaterally; obesity and cervical myofascial pain syndrome. Tr. 12. As to mental impairments, the ALJ found Berutti has mild mental limitations, but that her anxiety is nonsevere. Tr. 13. The ALJ concluded that Berutti has the following residual functional capacity (RFC): "light work, lifting and/or carrying 20 pounds occasionally, 10 pounds frequently; standing and/or walking 6 hours; sitting 6 hours; no climbing ladders, ropes, or scaffolds; no exposure to unprotected heights, dangerous machinery, hot or cold temperature extremes; occasionally reach in all directions with the right upper extremity; occasional overhead reaching with the left upper extremity; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." Tr.

16. The ALJ found that Berutti sustained her burden through step four and established she could no longer perform her past relevant work as a CNA. Tr. 23. Relying on the testimony of a vocational expert, the ALJ found Berutti could perform other work as a furniture rental consultant, usher, and counter clerk, photo. Tr. 24.

The Social Security Administration's Appeals Council denied Berutti's request for review. Tr. 1. The ALJ's decision, as the final decision by the Commissioner, is subject to judicial review.

## II. Legal Standard

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Milam*, 794 F.3d at 983. The Court "may not reverse the ALJ because substantial evidence exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Hilliard v. Saul*, 964 F.3d 759, 762 (8th Cir. 2020) (citing *Brown v. Barnhart*, 390 F.3d 535, 538 (8th Cir. 2004)).

## III. Discussion

An RFC is the most a claimant can still do despite her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). An ALJ should consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and

3

others, and an individual's own description of [her] limitations.'" *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)).

## A. Whether the ALJ's RFC as to Berutti's Mental Functional Limitations is Supported by Substantial Evidence

Berutti claims that the ALJ found her medically determinable impairment of anxiety to be nonsevere, then acknowledged mild limitations stemming from her anxiety, but did not include these limitations in the RFC or hypothetical to the vocational expert. Doc. 12, p. 22. Berutti argues this omission constitutes reversible error. *Id.* The Commissioner contends that the ALJ was not required to include limitations related to anxiety when considered with Berutti's other impairments, and that the ALJ "permissibly decided Plaintiff's anxiety did not result in more than minimal vocational limitations either singly or in combination with her other impairments." Doc. 13, p. 11.

SSR 96-8p instructs that the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p.

At Step 3, the ALJ found Berutti has mild limitations in understanding, remembering, or applying information; interacting with others; ability to concentrate, persisting or maintaining pace, and ability to adapt or manage herself. Tr. 13-14. The RFC does not include any mental limitations, and the ALJ's decision does not include analysis explaining the omission. The ALJ only stated that, "the following residual functional capacity assessment reflects the degree of

4

limitation the undersigned as found in the 'paragraph B'[1] mental function analysis." Tr. 14. The Court finds that this cursory explanation is insufficient. On the current record, the Court cannot discern why the ALJ chose not to include any mental limitations in the RFC after finding Berutti to have mild mental limitations. "[T]he mild mental limitations found by the ALJ should have been incorporated into the RFC determination or a reason provided for their omission, and on remand, the ALJ should either incorporate these limitations into the RFC or provide justification for their omission." *Vicky R. v. Saul*, 2021 WL 536297, at *14 (D. Minn. Jan. 28, 2021); *Clevenger v. Colvin*, 2016 WL 3911982, at *2 (W.D. Mo. July 15, 2016) (reversing where the ALJ failed to include his own findings on social limitations in the RFC determination and did not explain why the findings were omitted).

Because the Court cannot tell whether substantial evidence supports the RFC as to Berutti's mental limitations, and because the ALJ based the hypotheticals posed to the VE on this RFC, the Court cannot determine whether substantial evidence supports the hypothetical. In turn, testimony from a VE "constitutes substantial evidence only when based on a properly-phrased hypothetical question that comprehensively describes the limitations on a claimant's ability to function in the workplace." *Neeley v. Berryhill*, 2017 WL 4074614, at *2 (W.D. Mo. Sept. 14, 2017); *Gann v. Berryhill*, 2017 WL 3197610, at *3 (8th Cir. July 28, 2017); *Tucker v. Barnhart*, 363 F.3d 781, 784 (8th Cir. 2004). Accordingly, on remand, the ALJ must formulate the hypothetical questions consistently with the determination on whether to include or omit mental limitations in the RFC.

---

[1] The "paragraph B" criteria include four areas of mental functioning including (1) understanding, remembering, or applying information; (2) interacting with others; (3) ability to concentrate, persist, or maintain pace; and (4) ability to adapt or manage oneself. 20 CFR § 404.1520a(c)(3).

## B. Whether the ALJ's RFC as to Berutti's Physical Functional Limitations is Supported by Substantial Evidence

Berutti contends that the RFC is not supported by substantial evidence because the ALJ (1) failed to fully and fairly develop the record, (2) improperly discounted Berutti's work history, (3) incorrectly concluded her pain medications were inconsistent with her pain allegations, (4) erred by finding her delayed surgery suggested her symptoms were not as severe as she alleged, and (5) improperly rejected Berutti's disability allegations by relying on noncompliance with physical therapy, conservative treatment, and lapses in treatment.

### i. Duty to Develop the Record

Berutti argues that the ALJ improperly relied on the opinion of a non-examining, non-treating State agency physician, Dr. McCall, and that Dr. McCall's opinions do not constitute substantial evidence. Doc. 12, p. 23. Berutti claims the ALJ should have "fulfilled his duty to develop the record fully and fairly and obtained some opinion from an examining or treating physician or, at least, an expert who has a specialty relevant to Berutti's impairments, such as an orthopedist." *Id.* at 23-24.

Dr. McCall authored her report in January 2019. Tr. 94. Dr. McCall found Berutti's osteoarthrosis and allied disorders, disorders of back-discogenic and degenerative, and dysfunction – major joints all to be severe. Tr. 88. She recommended an RFC with light work, including occasional lifting of no more than twenty pounds, frequent lifting of no more than ten pounds, standing or walking about six hours in an 8-hour workday, sitting about six hours in an 8-hour workday, occasional pushing and pulling and occasional reaching overhead with bilateral upper extremities due to tears in both shoulders, and a variety of postural and environmental limitations. Tr. 90-91.

6

As to Berutti's claim that Dr. McCall's opinions do not constitute substantial evidence because she is a non-examining, non-treating State agency physician, Berutti relies on pre-2017 regulations and *Jenkins v. Apfel*.² Doc. 12, p. 23; Doc. 14, p. 3 n.2. In 2017, the Social Security Administration updated some of its regulations, and these new regulations apply to claims filed after March 27, 2017, such as Berutti's claim. Pursuant to 20 C.F.R. § 404.1520c(a), the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. For all medical opinions, the ALJ considers supportability and consistency.³ *Id.* As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his [] medical opinion(s)" the more persuasive the medical opinions will be. *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) [] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) [] will be." *Id.* § 404.1520c(c)(2).

---

² In *Jenkins*, the Eighth Circuit held that where there was "no other evidence in the record to support the ALJ's [RFC] finding besides the non-treating physician's assessment" that "assessment alone cannot be considered substantial evidence in the face of the conflicting assessment of a treating physician." *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Here, however, there is other medical evidence in the record to support the ALJ's RFC beyond Dr. McCall's assessment, and there is no conflicting assessment from a treating physician. Accordingly, *Jenkins* is distinguishable.

³ Berutti argues "the new regulation specifically requires the ALJ to consider examining and treating relationship." Doc. 14, p. 4 n.2. The medical source's relationship with the claimant is contained in paragraph (c)(3) of the regulations. 20 C.F.R. § 404.1520c(c)(3). However, the 2017 regulation specifically states, "[w]e may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.* § 404.1520c(b)(2). Accordingly, the ALJ was not required to explain Dr. McCall's relationship with Berutti.

7

In the decision, the ALJ evaluated Dr. McCall's opinions for both supportability and consistency. Tr. 23-24. The ALJ found Dr. McCall's opinions were supported by the record because Dr. McCall provided specific references to relevant objective medical evidence in forming her opinions. Tr. 24; Tr. 92-94 (Dr. McCall's explanation supporting her RFC recommendation with references to medical events and records). Specifically, the ALJ found that Dr. McCall relied on Berutti's long history of chronic knee and back pain, unremarkable physical exam findings, x-ray imaging and exams showing joint stability in the knees and ankles, and other objective evidence. Tr. 24. These findings by Berutti's doctors are documented throughout the record and included in the ALJ's decision. *E.g.*, Tr. 18 (discussing Dr. Cornett's medical findings, Dr. Malik's EMG exam results, Dr. Bleazard's work restrictions, and Dr. Cantrell's clinical impressions and treatment notes); Tr. 19 (discussing Dr. Paul's consultation notes and x-ray imaging and Dr. Ballard's MRI imaging review); Tr. 20 (discussing Dr. Boyajian-Oneill's evaluation notes). The doctors reported mostly normal exam findings. *E.g.*, Tr. 691 (reassuring Berutti that her x-rays "look appropriate"); Tr. 710 ("Full range of motion and muscle strength was normal in the upper and lower extremities bilaterally."); Tr. 796 (recording a "slight deviation" of a nerve root and "mild" bilateral stenosis after a lumber MRI). The ALJ's conclusion that the objective medical evidence supported Dr. McCall's RFC recommendation is supported by the record as a whole. Tr. 23-24; 20 C.F.R. § 404.1520c.

As to consistency, the ALJ found Dr. McCall's opinions were consistent with Dr. Downing's findings. Tr. 24. Dr. Downing, who was hired at Defendant's request, examined Berutti on December 15, 2018. Tr. 707. After examination, Dr. Downing stated Berutti was "able to complete physical exam without significant limitation." Tr. 710. He diagnosed a history of osteoarthritis and degenerative joint disease, history of anxiety, and hypertension, and

8

Case 4:20-cv-00641-NKL   Document 15   Filed 04/16/21   Page 8 of 20

found that Berutti's muscle strength was normal, but that her range of motion in her right shoulder was limited. Tr. 710-11. Berutti states that "[i]t does not appear Dr. Downing reviewed any medical records," but does not point to any regulations requiring a consultative examiner to review medical records to complete a claimant's in-person evaluation. Doc. 14, p. 4. Berutti argues that Dr. Downing's area of practice is radiology, but he "apparently did not, however, review any x-rays or MRIs." *Id.* Again, Berutti does not point to any regulations requiring that a consultative examiner have a particular area of practice or review certain objective evidence to complete the evaluation.

Finally, Berutti claims that thirty days after Dr. Downing's exam, Hawkin's and Speed's tests were positive, and MRIs showed tendon tears. She argues Dr. Downing's exam findings were not "normal" such that the ALJ's finding of Dr. Downing's opinions as consistent with Dr. McCall's opinions is incorrect. Doc. 14, p. 5. However, Dr. McCall specifically stated that Berutti had positive Hawkin's impingent test and discomfort with Speed's test and discussed the January 2019 MRIs of both shoulders. Tr. 93-94. While Dr. Downing did not have the benefit of this information, Dr. McCall was aware of and incorporated the information into her RFC recommendation. *Id.* This discrepancy in the information available to each doctor does not justify finding the doctors' opinions inconsistent with each other. Both doctors otherwise offered consistent opinions, and the ALJ's finding that Dr. McCall's opinions were consistent with Dr. Downing's findings is supported by the record.

Ultimately, the ALJ found Dr. McCall's opinions were "persuasive," Tr. 24, and incorporated her recommendations into the RFC. Under the 2017 regulations, Dr. McCall's opinions constitute substantial evidence, and the ALJ appropriately evaluated her opinions based on the supportability and consistency factors. 20 C.F.R. § 404.1520c.

9

Case 4:20-cv-00641-NKL   Document 15   Filed 04/16/21   Page 9 of 20

Berutti also takes issue with the ALJ's characterization of Dr. McCall's specialization. In the decision, the ALJ stated Dr. McCall was a "specialist." Tr. 23. Dr. McCall's area of practice is listed as "adolescent medicine" and Berutti contends that specialization is inapplicable to her because she is 53 years old. Doc. 12, p. 23. The social security regulations state that an ALJ may consider "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5). Looking at the context of the ALJ's statement, the ALJ concluded Dr. McCall "is a specialist and she is familiar with the program rules." Tr. 23. It is unclear from this statement whether the ALJ understood Dr. McCall to be an orthopedic specialist, or to be a social security regulations specialist. However, because considering a medical source's specialization or understanding of the disability program's policies are not required for the ALJ's analysis, the Court finds that the ambiguity and deficiency in opinion-writing technique does not require remand. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotations omitted) (holding that "an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome").

As to Berutti's argument that the ALJ should have further developed the record by obtaining an opinion from an examining or treating physician, or an expert with orthopedic expertise, the Court finds the ALJ did not have a duty to further develop the record. Further development was unnecessary because the ALJ's RFC determination was properly based on Dr. McCall's opinions and the objective evidence in the record provided by Berutti's doctors. *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding no duty to further develop the record where "medical assessments of state agency medical consultants as to [the claimant's] limitations are of record and were expressly considered by the ALJ"); *Martise v. Astrue*, 641

F.3d 909, 926-27 (8th Cir. 2011) (holding that the ALJ is required to order further medical examinations only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled); *Hilliard*, 964 F.3d at 763 ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.") (internal citation omitted). The ALJ did not err by failing to further develop the record and remand is not warranted on this basis.

### ii. Work History

Berutti argues that the ALJ failed to evaluate her work history. Doc. 12, p. 24. This argument appears to have two parts: first, that the ALJ failed to consider Berutti's consistent work history as a favorable factor in the credibility determination, and second, that the ALJ impermissibly punished Berutti for seeking work after her alleged onset date of disability.

On the first point, Berutti argues that the "ALJ failed to consider the fact that Berutti has a long and steady work history with consistent wages for at least 15 years prior to her onset date of disability." Doc. 12, p. 24; *see also Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir. 1984) ("[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."). In assessing a claimant's credibility, the ALJ considers several factors, including the claimant's daily activities, the duration, intensity, and frequency of pain, the dosage, effectiveness and side effects of medication, any functional restrictions, and work history. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). However, the ALJ "need not explicitly discuss each" factor. *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

As to Berutti's credibility, the ALJ found that Berutti's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [her]

11

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 17. The ALJ discussed many of the factors outlined by the Eighth Circuit in *Polaski*. 739 F.2d at 1322. For example, the ALJ detailed the frequency of Berutti's pain as documented in her appointments with doctors, as well as the effectiveness of her medications. *E.g.*, Tr. 17 (finding Berutti stated she was not in pain when using medications); Tr 297 (Berutti reporting her pain is "better, small amounts of pain"); *Finch*, 547 F.3d at 935 (holding that factors to consider in evaluating credibility include frequency of pain and effectiveness of medication, among others).

The ALJ further found that Berutti did laundry, vacuumed, drove, ran errands, grocery shopped, and mowed the yard, and that these activities were inconsistent with Berutti's claims of pain in her shoulder, back, and knees. Tr. 20-22; *see Goff*, 421 F.3d at 792 (finding that the claimant's ability to work part-time as a kitchen aide, vacuum, wash dishes, do laundry, cook, shop, drive, and walk were inconsistent with the claimant's subjective complaints); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). Evidence of daily activities in and of itself is not sufficient to find that a claimant is not disabled but is properly considered in the credibility determination. *Finch*, 547 F.3d at 935 (listing factors to be considered); *Goff*, 421 F.3d at 792 (finding daily activities inconsistent with allegations of pain, which diminished credibility); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (holding that the fact a claimant can engage in personal activities does not equate to substantial evidence that the claimant can engage in substantial gainful activity). The ALJ properly evaluated Berutti's credibility based on her daily activities, dosage and effectiveness of medication, and her functional restrictions. *Moore v. Astrue*, 572 F.3d 520, 525

(8th Cir. 2009) (finding no error where the ALJ did not evaluate the claimant's work history but evaluated other factors to conclude the claimant was not credible); *Goff*, 421 F.3d at 792 (finding that the ALJ need not make a specific finding as to each credibility factor). Failure to also explicitly discuss Berutti's steady employment history as a factor supporting her credibility was not required, and remand is not warranted on this basis.

On the second point, Berutti argues that the ALJ should not penalize her for attempting to make ends meet by working a part-time job prior to an award of benefits. Doc. 12, p. 25. The ALJ found that Berutti had "started a new job recently at Goodwill." Tr. 17. The ALJ also stated that Berutti's February 1, 2015 alleged onset date of disability was inconsistent with evidence that she lifted a resident at work in July 2015.[4] *Id.* "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff*, 421 F.3d at 792 (citation omitted). Berutti testified at the hearing that her employment with Goodwill would be on a part time basis. Tr. 36-37. She stated she could not engage in full time employment due to the pain in her knees, which bother her when standing for long periods. *Id.* The ALJ accounted for this information when forming the RFC with 6-hour standing limitations, as recommended by Berutti's doctor. Tr. 16, 22. The Court finds that the ALJ did not penalize Berutti for seeking part-time

---

[4] Berutti argues that the "date on which the patient was lifted is not apparent from the record" and "[i]t appears the lifting of the resident actually occurred in 2014." Doc. 12, p. 25. Berutti cites to two pages in the record documenting February 26, 2014 and May 18, 2014 incidents in which Berutti lifted residents and strained her left knee and lower back. 322, 360. Defendant contends "the record from July 2015 plainly states the injury occurred in this month." Doc. 13, p. 17. The ALJ cited to a treatment record from Meritas Health, which clarifies the date of injury as July 16, 2015 and the date of the appointment as July 20, 2015. Tr. 17, 301. A note from Excelsior Springs Hospital signed on July 16, 2015 stated Berutti would be able to return to work on July 17, 2015 but would not be able to lift more than thirty pounds until released by her doctor for regular duty. Tr. 303. The Court finds that Berutti suffered more than one injury from lifting a resident, as show in the record, but that one of these occasions occurred in July 2015. Accordingly, the ALJ's conclusion that Berutti continued to work after her February 1, 2015 alleged onset date of disability is supported by the record.

13

employment or continuing to work after her alleged onset date of disability, and instead used this information to support the finding that Berutti's subjective complaints of pain were inconsistent with the evidence of record. Tr. 23 (finding the RFC was supported in part by Berutti's ability to "seek work in retail environments such as Lowe's during the relevant period"); *Medhaug*, 578 F.3d at 816 (holding the ALJ properly considered the claimant's employment positions maintained after the alleged onset of disability as part of the credibility analysis, and finding the claimant not credible in part because the employment was inconsistent with the claimant's allegations of limitations and pain). Remand is not warranted on this basis.

### iii. Pain Medication

Berutti argues that the ALJ's conclusion that Berutti's history of pain medication was inconsistent with her allegations of disability is not supported by substantial evidence because the "ALJ was operating under the mistaken impression Berutti was not taking Norco or prescribed pain medications" which "is factually incorrect and clearly influenced his decision." Doc. 12, p. 26. Specifically, Berutti argues the ALJ failed to understand that she was consistently using Norco because the ALJ misread a single document in the record showing Norco use. *Id.* at 25-26. The document is a May 2019 medical record from Dr. Boyajian-Oneill stating Berutti was taking Norco. Tr. 796-97. The Court agrees the ALJ misread this document when he stated Dr. Boyajian-Oneill "noted the claimant is not taking her Norco at that time." Tr. 20.

The Court disagrees that this mistake indicates that the ALJ did not appreciate that Berutti used Norco. In fact, the ALJ found that Berutti "demonstrated an ability to manage her chronic pain in her shoulders, back and knees for years with use of only Norco, at times." Tr. 21; *see also* Tr. 18 (noting that Dr. Cantrell prescribed Norco as needed to manage pain). The

14

ALJ continued, "she could manage her right knee pain with use of Norco through the date of her knee replacement surgery" and she "has a long history of knee and back pain waxing and waning, over the years, managed with Norco, at times, such that she could work" as a CNA and remain active in her daily activities. Tr. 21. These findings demonstrate that the ALJ was aware Berutti used Norco on multiple occasions for multiple reasons.

The record confirms that Berutti used Norco and other medications throughout the period of claimed disability. *E.g.*, Tr. 449 (documenting Motrin and pain medication usage); 643-44, 647; 707 (finding that "[m]edications help the symptoms"); Tr. 796 (documenting daily Norco use with "some improvement of pain" in May 2019). The record also contains evidence of times Berutti was not using Norco for pain management. *E.g.*, Tr. 253 (Berutti listing the medications she used in October 2018, and not including Norco in that list); Tr. 708 (Dr. Downing listing Berutti's medications, and not including Norco in that list); Tr. 788 (Dr. Ballard listing Norco under medications not currently being taken in January 2019, but prescribing Norco for future use). The ALJ pointed to evidence in the record showing Norco improved Berutti's pain and concluded that this evidence was inconsistent with her allegations of pain and disability. Tr. 21. Such a conclusion is within the ALJ's authority and is supported by substantial evidence in the record. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (finding no error with the ALJ's credibility determination where the claimant's symptoms improved with treatment); *Buford*, 824 F.3d at 797; *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

### iv. Delayed Surgery

Berutti contends that the ALJ erred by finding her delayed surgery suggested her symptoms were not as severe as she alleged. Doc. 26, p. 26. The record reflects that Berutti fell

15

in August 2018 and injured her shoulder. Dr. Ballard recommended shoulder surgery in March 2019. Tr. 790. However, thereafter Berutti's orthopedic surgeon put "surgical intervention on hold due to smoking and blood pressure medications." Tr. 796, 800. The ALJ found Berutti "is a candidate for rotator cuff surgery, yet she has not quit smoking and has sought only conservative care, if any, since her [rotator cuff tendon tears] diagnosis, suggesting her symptoms are not as severe as she has alleged." Tr. 21. Berutti argues that she was taking steps to stop smoking, and that the delayed surgery "in no way indicates her symptoms were not as severe as alleged." Doc. 12, p. 26. At the time of the hearing, Berutti had not undergone the shoulder surgery. Tr. 39.

Here, the record contains evidence that Berutti was trying to stop smoking. Tr. 744 (medical note documenting Berutti "is trying to quit smoking"); 785 (documenting a 2016 cessation counseling for tobacco use). The record also includes evidence that Berutti's shoulder symptoms were less than she described. For example, four months after Berutti's shoulder injury, Dr. Downing found limited range of motion in the right shoulder but concluded Berutti was without significant limitation. Tr. 709-10. Physical therapy, which is considered a more conservative approach than surgery, was also recommended. *Martsolf v. Colvin*, 2017 WL 77424, at *5 (W.D. Mo. Jan. 9, 2017) (finding the physical therapy constitutes a conservative treatment). The Court finds that while potential conflicting evidence in the record exists, the ALJ's credibility determination regarding Berutti's delayed surgery is supported by substantial evidence in the record. *Hilliard*, 964 F.3d at 762 (holding that the Court "may not reverse the ALJ because substantial evidence exists in the record that would have supported a contrary outcome"); *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").

### v. Treatment History

Finally, Berutti argues that the ALJ's reliance on lapses in treatment, conservative treatment, and Berutti's failure to comply with physical therapy constitutes error. Doc. 12, p. 27. Berutti points to SSR 16-3p which instructs:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

The regulations provide a list of factors for the ALJ to consider when evaluating a claimant's treatment history. SSR 16-3p. Some of these factors include structuring activities to minimize symptoms to a tolerable level, receiving periodic treatment because symptoms have reached a plateau, refusing medications due to side effects, and declining treatment due to cost. *Id.*

As to compliance with physical therapy, Berutti argues she completed physical therapy for her low back, foot, and knee, and did not complete physical therapy for her shoulder. Doc. 12, p. 27. The ALJ's findings are consistent with this distinction. The ALJ found that "physical therapy and orthotics" resulted in "some improvement in her [foot] symptoms." Tr. 18. However, the ALJ also found that "physical therapy discharged her from care secondary to her noncompliance and her frequent appointment cancellations… suggesting her [shoulder] symptoms [were] not as severe as she alleged." Tr. 19. The Court finds that evidence of both compliance and noncompliance with physical therapy exists. For example, the record contains instances in which Berutti failed to participate in physical therapy. *E.g.*, Tr. 420 (Dr. Bleazard noting that "[a]t this time, she has failed conservative treatments including orthotics, physical

17

therapy, and stretching."); Tr. 591 (Berutti electing to discontinue physical therapy); Tr. 778 (discharging Berutti from physical therapy for non-compliance). However, the record also includes evidence of Berutti's compliance with physical therapy. *E.g.*, Tr. 435 (noting Berutti has been doing exercises at home); Tr. 469 (attending physical therapy to increase range of motion and strength); Tr. 588 (attending physical therapy to improve shoulder mobility). Despite some evidence of compliance, the ALJ's reliance on the evidence of noncompliance is supported by the record as a whole and does not constitute error. *Hilliard*, 964 F.3d at 762 (holding that the district court "may not reverse the ALJ because substantial evidence exists in the record that would have supported a contrary outcome").

The Court next addresses whether the ALJ properly relied on conservative treatments and lapses in treatment. The record shows that Berutti underwent surgery for her knee, which would not be considered conservative, but physical therapy and pain medication treatments for her back, foot, and shoulder would be considered conservative. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding that the ALJ properly considered the claimant's treatment history of exercises as relatively conservative); *Martsolf*, 2017 WL 77424, at *5 (finding anti-inflammatories and physical therapy to constitute conservative treatments that did not support a finding of disability). Berutti was recommended physical therapy, stretching, and anti-inflammatories, a compression sleeve, and applying ice, water aerobics, and walking for exercise, all conservative treatments. Tr. 39, 395, 422, 424, 691; 798. The ALJ found that Berutti "sought only conservative care" for her shoulder "suggesting her symptoms are not as severe as she has alleged." Tr. 21. The ALJ found Berutti's right knee improved after surgery "with only conservative medical care, thereafter." *Id.*

18

As to lapses in treatment, the ALJ explained that "follow up visits with Dr. Cantrell in 2018 and 2019 are sparse, suggesting her back, shoulder and foot pain stabilized as evident in her significantly reduced level of complaints and treatment following her knee replacement in February 2017." Tr. 19. The ALJ found that Berutti "did not return to physical therapy or report any significant changes in her symptoms… suggesting her acute increase in her shoulder symptoms and back pain had stabilized, evident in her use of Motrin over Norco, and are not as severe as she has alleged." Tr. 20 (further finding that "her treatment remains conservative, and her complaints and treatment for severe pain subside, after prescribed rest from work").

In making the above findings, the ALJ did not explicitly list or discuss the factors contained in SSR 16-3p: structuring activities to minimize symptoms to a tolerable level, receiving periodic treatment because symptoms have reached a plateau, refusing medications due to side effects, and declining treatment due to cost. The record shows that some of these factors may have applied to Berutti's circumstances. *E.g.*, Tr. 691 (Berutti declining anti-inflammatories because she has difficulty with them, and declining steroid injections because she "received shots in the past and does not like them"); Tr. 635 (Berutti reporting she was uninsured); Tr. 93 (Dr. McCall stating Berutti "had little follow up" between 2016 and 2018).

In *Martsolf v. Colvin*, the claimant similarly argued that the ALJ failed to consider the SSR 16-3p factors and pointed to places in the record that could suggest support for the listed factors. *Martsolf*, 2017 WL 77424, at *6. The Court held that despite these "isolated spots in the record that could suggest support for" Martsolf's position, "the ALJ's decision regarding credibility of, or the weight given to, Martsolf's subjective complaints is well-supported by substantial evidence on the whole record, including Martsolf's admissions, and therefore will not be disturbed." *Id.* Here, too, the ALJ's decision is supported by substantial evidence on the

19

whole record and Berutti has failed to point to any case law showing that an ALJ's failure to explicitly evaluate the factors in SSR 16-3p under these circumstances warrants remand. *See* Docs. 12, 14; *Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (finding that if a claimant's pain is controlled by treatment or medication, it is not considered disabling); *Edwards v. Barnhart*, 314 F.3d 966, 967 (8th Cir. 2003) (holding that the ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Remand is not warranted on this basis.

## IV. Conclusion

The ALJ's decision as to Berutti's physical RFC is supported by substantial evidence. However, because the ALJ's decision as to the mental RFC is not supported by substantial evidence, the Court remands for further development of the record consistent with this Order.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: April 16, 2021  
Jefferson City, Missouri